HULBERT T. E. BEARDSLEY, Respondent, Appellant, *v.* AMERICAN BONDING COMPANY OF BALTIMORE, Appellant, Respondent.

First Department, March 17, 1922.

Principal and agent — action for commissions due upon premiums paid on renewal of bonds — evidence — testimony as to meaning of terms of contract as customarily understood properly rejected — testimony as to consideration paid by plaintiff for his partner's interest in claim properly rejected — accord and satisfaction — payment made on undisputed claim not accord and satisfaction as to disputed claim — verdict in favor of plaintiff supported by evidence — limitation of actions — commissions on premium paid on each renewal gives rise to separate cause of action — statute is bar only to commissions on premiums collected more than six years before action commenced — plaintiff entitled to commissions on annual fidelity bonds renewed by new bonds or renewal certificates — plaintiff not entitled to commissions on renewal of bond given prior to commencement of agency — plaintiff not entitled to commissions on bond changed to conform to regulations of United States government — plaintiff not chargeable with commissions paid on reinsurance premiums.

In an action to recover certain commissions alleged to be due on premiums on renewal of bonds written by plaintiff and his assignor during the period of their agency with the defendant, in which the court rejected evidence offered by the plaintiff to show the meaning of the term " business written," it was proper for the court to reject similar evidence offered by the defendant solely to disprove that the plaintiff was qualified to testify as to the custom in the business by giving a different version.

Inasmuch as the defendant did not on the trial take the position that the term " business written " was a well-understood term in the surety insurance business, but that the words as used were to be determined in accordance with the contract, and in view of the surrounding circumstances, and not by reference to a custom of the business, evidence tending to show the meaning of the words as customarily used was properly rejected.

It was not error for the court to exclude evidence offered on the part of the defendant as to the consideration which the plaintiff paid to his partner for an assignment of the partner's interest in the claim against the defendant.

Checks sent by the defendant to the plaintiff and his assignor in payment of outstanding premiums collected after the termination of the agency, the liability

for the payment of which was not disputed, did not amount to an accord and satisfaction of the plaintiff's entire claim, for, by accepting payment of a valid and subsisting claim, the plaintiff could not be held to have accepted the same in accord and satisfaction of the claim in suit which was a distinct, disputed claim.

The verdict in favor of the plaintiff was supported by the evidence and was not contrary to the law.

Each item of premium paid on the renewals gave rise to a separate cause of action and the plaintiff's right to commissions on said premiums was barred as to all premiums collected prior to six years before the action was commenced, but it was not barred as to premiums collected within the six-year period.

The cause of action for commissions on premiums collected within the six-year period was not barred by an account stated followed by an accord and satisfaction, for the account that was rendered was for the collection of premiums outstanding at the termination of the agency, which was an admitted indebtedness and the payments that were made were on account of that admitted indebtedness and did not embrace in any way the disputed items.

The plaintiff was entitled to commissions on the premiums paid upon the renewal of annual fidelity bonds, whether said renewals were effected by the issuance of new bonds or by the giving of renewal certificates, providing the terms and conditions thereof were the same.

The plaintiff was not entitled to commissions on a premium on a renewal of a fidelity bond executed prior to the commencement of the agency and renewed by a new bond written by the plaintiff's firm.

The plaintiff was not entitled to commissions on the cancellation of certain revenue bonds on the demand of the United States government and the issuance of other bonds in a different form in conformity with the requirements of the government, for these bonds being issued on a different form, were not renewals of the old bonds, but were new contracts.

The plaintiff was not chargeable with commissions paid on the reinsurance premiums, where the defendant had paid full commissions to the plaintiff during the continuance of the agency as to those policies, for by so doing the defendant waived its claim to a refund of the amount of the commissions, and, as to the premiums collected during the period that the claim for commissions was held to be barred by the Statute of Limitations, the plaintiff cannot be required to pay back a portion of that for which he is not credited.

CROSS-APPEALS by the plaintiff and defendant from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 11th day of September, 1920, upon the verdict of a jury upon certain issues, and upon the report of a referee as to certain other issues, and also from an order entered in said clerk's office on the 2d day of August, 1920, modifying the referee's report.

*Wilder, Ewen & Patterson* [*John Ewen* of counsel; *William R. Wilder* with him on the brief], for the plaintiff.

*Platt, Field, Taylor & Patterson* [*George W. Field* of counsel; *Eli J. Blair* with him on the brief], for the defendant.

PAGE, J.:

The action was brought by the plaintiff in behalf of himself and the assignee of his former partner to recover certain commissions alleged to be due upon business written by them as agents of the

defendant during a period of four years, the points in controversy being: the claim on behalf of the plaintiff that the contract provided for payment of the commission on all outstanding and unpaid premiums at the time of the termination of the agency, and also the payment of a commission upon all premiums paid in renewal of bonds written during the continuance of the agency contract, and also for an accounting of the amount of such premiums.

By stipulation of the parties the questions of law and fact arising under the first two claims were sent to a jury for trial, with the agreement that if the jury found the contract to be as claimed by the plaintiff, there should be a referee appointed to take and state the account. The defendant on this appeal challenges the verdict on its exceptions to evidence and to the denial of its motion to set aside the verdict and for a new trial.

Upon the trial the defendant admitted liability to pay commissions on all outstanding premiums uncollected at the time of the termination of the agency contract, and agreed that it was accountable for such commissions. Therefore, the single question submitted to the jury was, whether under the agency contract the plaintiff was entitled to the commission therein specified upon premiums on renewal of bonds written during the period of their agency.

The contract was oral. The plaintiff and his assignor testified that it was the understanding of the parties that they were to have a commission on these renewal premiums. Testimony was given as to the surrounding circumstances of the making of the contract, in which it appeared that the plaintiff and his assignor had been solicitors in the employ of the New York agency; that the business had not been conducted at a profit, and learning that a change was sought in the New York agency, they applied to the defendant for such agency. Mr. Poe, secretary and treasurer of the defendant, and Mr. Unverzagt, its superintendent of agencies, also testified as to the conversation. Thus arose a conflict of testimony as to the terms of the contract, which was submitted to the jury in a charge to which no exception was taken, and the jury returned a verdict in favor of the plaintiff's version of the contract.

The brief on behalf of the defendant is largely devoted to matters that would go to the probabilities of the case; but it fairly appeared that the terms of the contract could not be determined as a matter of law, but had to be submitted to the jury to find what the agreement made by the parties really was.

The defendant claims that evidence which was offered by it as to the meaning of the words " business written " as customarily understood by insurance men was excluded, and claims that this was prejudicial error because the plaintiff and his assignor were

allowed to testify as to their understanding of the term; but when the plaintiff produced a Mr. Adams and offered to prove by him what the custom in the casualty insurance business in this regard was, the defendant's attorney objected, on the ground that it was immaterial and irrelevant and the court then stated: " Here is a special contract declared on. It, therefore, becomes immaterial what the custom is. The plaintiff claims that his firm were to have forty per cent. Mr. Wilder: You think then this testimony is not necessary? The Court: It is absolutely unnecessary." Thereafter the defendant asked Mr. Poe, called on its behalf: " Are you familiar with the terms and expressions that are used in the surety business? A. I am, sir. Q. What is the meaning of the term ' business written? ' " Whereupon the plaintiff's attorney said that this might result in his being obliged to have Mr. Adams back, and that he objected to the testimony. The objection was sustained. Whereupon the defendant's attorney stated: " I offer that solely on the question that Mr. Beardsley was qualified as an expert to testify as to the meaning of these words. Your Honor will recall that that testimony was received over my objection." Therefore, the testimony was not offered to prove a custom, but to disprove that Beardsley was qualified to testify as to the custom by giving a different version, which clearly was improper. Therefore, the objection was properly sustained.

The defendant did not at the trial take the position that the term " business written " was a well-understood term in the surety insurance business or what the custom was as to the interpretation of that phrase. It distinctly took the position that the words as used were to be determined in accordance with the contract, and in view of the surrounding circumstances, and not by reference to a custom of the business. There is, therefore, no merit in this objection.

The defendant complains that evidence relating to the consideration paid by the plaintiff to his partner for the assignment of his claim was erroneously excluded. There is no merit in this contention. It is no concern of the defendant what consideration the plaintiff may have given for the assignment. All that the defendant is concerned with is that legal title to the claim is vested in the plaintiff, so that it could not be called upon to respond twice. The defendant's argument is that if after the termination of the agency the plaintiff's assignor had received a small or nominal consideration, it would tend to show that he had no confidence in his claim. This is obviously an erroneous assumption.

The defendant from time to time sent plaintiff and his assignor checks which were received by the plaintiff. Claim is made that thus there became an accord and satisfaction of the plaintiff's

entire claim. This, however, is not well founded. It was shown that the checks were sent in payment of outstanding premiums collected, the liability for the payment of which was not disputed. The plaintiff could not, by accepting payment of a valid and subsisting claim, be held to have accepted the same in accord and satisfaction of a distinct disputed claim.

The verdict was supported by the evidence and was not contrary to the law; defendant's motion to set it aside was properly denied.

Both parties challenge the amount of the judgment entered upon the report of the referee. While the record is quite voluminous, the contentions of the parties are reduced to very few items. The referee made a very excellent report on the disputed items, and the learned justice in modifying the report has written a very clear opinion.

The points urged by the defendant on this appeal are: *First*, that the premiums from renewals collected after September 6, 1909, as well as amounts collected before that date, are barred by the Statute of Limitations. The referee held, and the justice concurred in his decision, that each item of premium paid on the renewals gave rise to a separate cause of action, and that, therefore, all items accruing prior to six years before the action was commenced, or September 6, 1909, were barred by the Statute of Limitations. The · defendant's theory seemed to have been that the plaintiff should have ascertained the amounts that were due him as the premiums were paid, and that because he did not inquire and assert his right thereto he has in some way lost his right of action. This is not a question of knowledge of the claim or of laches. The only lapse of time that would bar the plaintiff is that provided by the Statute of Limitations, which was six years. (See Code Civ. Proc. § 382; now Civ. Prac. Act, § 48.)

The second contention of the defendant is that the commissions on premiums collected after January 1, 1910, are barred by an account stated followed by an accord and satisfaction. I have dealt with this claim heretofore in this opinion. The account that was rendered was for the collection of outstandings, which was an admitted indebtedness, and the payments that were made were on account of that admitted indebtedness and did not embrace in any way the disputed items. Therefore, in so far as the defendant appeals, the judgment should be affirmed.

The referee allowed the claim for renewal commissions upon fidelity bonds, on the theory that, although each bond had an annual termination, either the giving of a renewal certificate or of a new bond was a renewal, and the premium paid thereon was a renewal premium within the purview of the contract. The justice

at Special Term reversed the referee in this particular, and the defendant in support of this decision refers to cases that arose between the insured and the company, in which it was held that the liability fixed by the bond was for indemnity against the acts of the employee during the period of the bond, and that this liability was not extended by a renewal certificate or by the giving of a new bond, but that the liability under each bond and certificate was to be determined by defalcations occurring during the period respectively of the bond or renewal certificate. This question, however, is entirely different from the one arising between the insurer and the agent who procured the bond. In my opinion, it makes no difference whether the bond was renewed by a renewal certificate or by giving a new bond, providing the terms and conditions thereof were the same; and it is not shown in this case that the terms and conditions were different. The obligation is renewed; that is, extended to cover another definite period, and in my opinion the justice at Special Term erred in disallowing this item.

The plaintiff claimed to be entitled to the premium on a fidelity bond executed prior to their agency, insuring the North American Trust Company, which was renewed by a new bond written by the plaintiff's firm. Under the reasons stated above, the plaintiff would not be entitled to the commission on the premiums on that bond. The referee allowed it, and the justice correctly deducted it from the recovery.

In reference to the alcohol bonds: It appears that certain revenue bonds were given to the United States on alcohol stored in their warehouses; that thereafter the United States government insisted on a cancellation of these bonds and the issuance of another bond in a different form, although the amount of the bond and the premium remained the same. In my opinion, these bonds being issued on a different form were not renewals of the old bonds but were new contracts, and that it was correctly decided that the plaintiff was not entitled to commissions on the premiums as renewal premiums on these bonds.

The item of $671 paid as premium on reinsurance is made up of two classes of items, the first in which the full commission had been paid to the plaintiff during the continuance of the agency, and second, in which the premiums were collected during the period that the claim for commissions was held to be barred by the Statute of Limitations. As the reinsurance was necessitated by the amount of the liability exceeding that permitted by statutes for the company to assume, an immediate reinsurance would be required. By paying the full commissions without deduction or making any claim for the repayment of the commission on the portion reinsured, the

defendant waived its claim thereto; and as this Statute of Limitations was held to have barred the plaintiff's claim for commissions in the second class, the plaintiff cannot be required to pay back a portion of that for which he is not credited. The Statute of Limitations would also apply to the defendant's claim to the first class.

The judgment will, therefore, be modified in accordance with the opinion, and as so modified affirmed, with costs to the plaintiff.

CLARKE, P. J., DOWLING and SMITH, JJ., concur; GREENBAUM, J., concurs in result.

Judgment modified in accordance with the opinion and as so modified affirmed, with costs to the plaintiff. Settle order on notice.